**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

DISTRICT OF MINNESOTA

Case number *(if known)* _____   Chapter 15

☐ Check if this an amended filing

## Official Form 401
# Chapter 15 Petition for Recognition of a Foreign Proceeding    12/15

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

| | | |
|---|---|---|
| 1. | Debtor's name | UrtheCast, Corp. |

| | | |
|---|---|---|
| 2. | Debtor's unique identifier | **For non-individual debtors:** |

☒ Federal Employer Identification Number  98-1247087

☐ Other ____. Describe identifier ____.

**For individual debtors**

☐ Social Security Number: ____

☐ Individual Taxpayer Identification Number (ITIN): ____

☐ Other ____. Describe identifier ____.

| | | |
|---|---|---|
| 3. | Name of foreign representative(s) | UrtheCast, Corp. |

| | | |
|---|---|---|
| 4. | Foreign proceeding in which appointment of the foreign representative(s) occurred | CCAA proceeding of Urthecast Corp. et al, No. S-208894, in the Supreme Court of British Columbia, Vancouver Registry |

| | | |
|---|---|---|
| 5. | Nature of the foreign proceeding | *Check one:* |

☒ Foreign main proceeding

☐ Foreign nonmain proceeding

☐ Foreign main proceeding, or in the alternative foreign nonmain proceeding

| | | |
|---|---|---|
| 6. | Evidence of the foreign proceeding | ☒ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached. |

☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.

☐ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.

_____

| | | |
|---|---|---|
| 7. | Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)? | ☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending). |

☒ Yes

| | | |
|---|---|---|
| **8.** | **Others entitled to notice** | Attach a list containing the names and addresses of: |

(i)    all persons or bodies authorized to administer foreign proceedings of the debtor,

(ii)   all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

(iii) all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

---

**9.    Addresses**

| **Country where the debtor has the center of its main interests:** | **Debtor's registered office:** |
|---|---|
| Canada | 1055 Canada Place, Ste 33, Vancouver BC V6C0C3 |
| | <small>P.O. Box, Number, Street, City, State/Province/Region & ZIP/Postal Code</small> |
| | Canada |
| | <small>Country</small> |

| **Individual debtor's habitual residence:** | **Address of foreign representative(s):** |
|---|---|
| | 1055 Canada Place, Ste 33, Vancouver BC V6C0C3 |
| <small>P.O. Box, Number, Street, City, State/Province/Region & ZIP/Postal Code</small> | <small>P.O. Box, Number, Street, City, State/Province/Region & ZIP/Postal Code</small> |
| | Canada |
| <small>Country</small> | <small>Country</small> |

---

**10.    Debtor's website** (URL)     www.urthecast.com

---

**11.    Type of debtor**

*Check one:*

☒  Non-individual (*check one*):

    ☒  Corporation. Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

    ☐  Partnership

    ☐  Other.
    Specify: _____

☐  Individual

---

**12. Why is the venue proper in *this district*?**

Check one:

☐ Debtor's principal place of business or principal assets in the United States are in this district.

☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district.

☒ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:

An affiliate ch. 15 debtor has its principal U.S. assets in this district

---

**13. Signature of foreign representative(s)**

I request relief in accordance with the chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is trued and correct.

I declare under penalty of perjury that the foregoing is true and correct,

X _____       Sai Chu, Chief Financial Officer
Signature of foreign representative                    Printed name

Executed on  10 / 05 / 2020
             MM / DD / YYYY

X _____       _____
Signature of foreign representative                    Printed name

Executed on  _____
             MM / DD / YYYY

---

**14. Signature of attorney**

X  /e/ Ryan T. Murphy                            Date  10/05/2020
Signature of Attorney for foreign representative         MM / DD / YYYY

Ryan T. Murphy 311972
Printed name

Fredrikson & Byron, P.A.
Firm name

200 S Sixth St, Ste 4000
Minneapolis, MN 55402
Number, Street, City, State & ZIP Code

612.492.7000                                     rmurphy@fredlaw.com
Contact phone                                    Email address

311972 MN
Bar number and State

**<u>UrtheCast, Corp.</u>**
**<u>Chapter 15 Voluntary Petition Attachments</u>**

Addendum A. Statement Pursuant to 11 U.S.C. § 1515(c)

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

In re:

UrtheCast Corp., *et al.*,

Debtors in a Foreign Proceeding.[1]

Joint Administration Requested

Case No.: 20-_____

Chapter 15

### CONSOLIDATED STATEMENT REGARDING KNOWN FOREIGN PROCEEDINGS

I, Sai Chu, hereby declare under penalty of perjury under the laws of the United States of America, pursuant to section 1746 of title 28 of the United States Code, as follows:

1.      I am the Chief Financial Officer of UrtheCast Corp., which is the duly appointed foreign representative of the above-captioned debtors (the "Debtors"), which are the subject of proceedings under the Companies' Creditors Arrangement Act before the Supreme Court of British Columbia, Canada (the "Canadian Court"), No. S-208894, Vancouver Registry (the "Canadian Proceeding").

2.      I respectfully submit this statement, as required under section 1515(c) of title 11 of the Bankruptcy Code, in support of the verified chapter 15 petition filed by the Foreign Representative seeking recognition by the United States Bankruptcy Court for the District of Minnesota of the Canadian Proceeding as foreign main proceedings or, in the alternative, foreign nonmain proceedings.

---

[1] The Debtors and the last four digits of their U.S. EIN or other unique identifier are as follows: UrtheCast Corp. (#7087); Geosys-Int'l, Inc. (#8642); Geosys Australia PTY (#1624); Geosys Europe SARL (#4389); Geosys S.A.S. (#3790); Geosys do Brasil Sistemas de Informacao Agricola Ltda (#01-34); and Deimos Imaging S.L.U. (#4529).  The Debtors' mailing address is 1055 Canada Place, Ste 33, Vancouver BC V6C0C3.

3.      Pursuant to the requirements of section 1515(c) of the Bankruptcy Code, to the best of my knowledge, the following are the only proceedings under a law relating to adjustment of debt of any kind pending with respect to the Debtors and thus are the only known "foreign proceeding" with respect to the Debtors, as that term is defined in section 101(23) of the Bankruptcy Code: (a) the Canadian Proceedings currently pending before the Canadian Court and (b) the bankruptcy materials filed by Geosys SAS with the Toulouse Commercial Court, France on September 18, 2020.  As to the proceeding relating to Geosys SAS in France, an initial hearing occurred on September 22, 2020, where the French Court considered the affairs of Geosys SAS as well as options for bankruptcy under French law.  A further ruling is anticipated in that proceeding whereby it will be determined the type of bankruptcy under which Geosys SAS will be administered.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct according to the best of my knowledge, information and belief.

Dated: _Oct 5_____, 2020

_____
Sai Chu

**UrtheCast, Corp.**
**Chapter 15 Voluntary Petition Attachments**

**#6. Evidence of the foreign proceeding.**   A certified copy, translated into English of the decision commencing the foreign proceeding and appointing the foreign representative.

## EXHIBIT A

SUPREME COURT
OF BRITISH COLUMBIA
VANCOUVER REGISTRY

SEP 0 4 2020

SUPREME COURT
OF BRITISH COLUMBIA

S E A L

VANCOUVER
REGISTRY

No. S-208894
**Vancouver Registry**

IN THE SUPREME COURT OF BRITISH COLUMBIA

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36, AS AMENDED

– AND –

IN THE MATTER OF A PLAN OF COMPROMISE AND ARRANGEMENT OF
URTHECAST CORP., URTHECAST INTERNATIONAL CORP., URTHECAST USA INC,
1185729 B.C. LTD. AND THOSE OTHER PETITIONERS SET OUT ON THE ATTACHED
SCHEDULE "A"

## ORDER MADE AFTER APPLICATION

### (Initial Order)

| BEFORE THE HONOURABLE | ) | |
|---|---|---|
| MADAM JUSTICE SHARMA | ) | September 4, 2020 |
| | ) | |

THE APPLICATION of the Petitioners coming on for hearing without notice at Vancouver, British Columbia, on the 4th day of September, 2020 (the "**Order Date**"); AND ON HEARING David E. Gruber and Alexandra Andrisoi, counsel for the Petitioners and those other counsel listed on **Schedule "B"** hereto; AND UPON READING the material filed, including the First Affidavit of Sai Chu sworn September 3, 2020 and the consent of Ernst & Young, Inc. ("**EY**") to act as Monitor; AND pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985 c. C-36 as amended (the "**CCAA**"), the British Columbia Supreme Court Civil Rules and the inherent jurisdiction of this Honourable Court;

THIS COURT ORDERS AND DECLARES THAT:

**JURISDICTION**

1.     The Petitioners are companies to which the CCAA applies.  For greater certainty, the companies set out in Schedule "A" to this Order shall enjoy the benefits of the protections provided herein, and shall be subject to the same restrictions hereunder.

**SUBSEQUENT HEARING DATE**

2.      The hearing of the Petitioners' application for an extension of the Stay Period (as defined in paragraph 16 of this Order) and for any ancillary relief shall be held at the Courthouse at 800 Smithe Street, Vancouver, British Columbia at ~~9~~ ~~a~~.m. on ~~MONDAY~~, the ~~14th~~ day of September 2020 or such other date as this Court may order.

**PLAN OF ARRANGEMENT**

3.      The Petitioners shall have the authority to file and may, subject to further order of this Court, file with this Court a plan of compromise or arrangement (hereinafter referred to as the **"Plan"**).

**POSSESSION OF PROPERTY AND OPERATIONS**

4.      Subject to this Order and any further Order of this Court, the Petitioners shall remain in possession and control of their current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof (the **"Property"**), and continue to carry on their business (the **"Business"**) in the ordinary course and in a manner consistent with the preservation of the Business and the Property.  The Petitioners shall be authorized and empowered to continue to retain and employ the employees, consultants, agents, experts, accountants, counsel and such other persons (collectively, **"Assistants"**) currently retained or employed by them, with liberty to retain such further Assistants as they deems reasonably necessary or desirable in the ordinary course of business or for carrying out the terms of this Order.

5.      THIS COURT ORDERS that the Petitioners shall be entitled to continue to utilize the cash management system currently in place as described in the Affidavit of Sai Chu sworn September 3, 2020 or replace it with another substantially similar cash management system (the **"Cash Management System"**) and that any present or future bank providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash

Management System, or as to the use or application by the Petitioners of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined) other than the Petitioners, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management System, an unaffected creditor under the Plan with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System.

6.      The Petitioners shall be entitled, but not required, to pay the following expenses which may have been incurred prior to the Order Date:

(a)     all outstanding wages, salaries, employee and pension benefits (including long and short term disability payments), vacation pay and expenses (but excluding severance pay) payable before or after the Order Date, in each case incurred in the ordinary course of business and consistent with the relevant compensation policies and arrangements existing at the time incurred (collectively "**Wages**"); and

(b)     the fees and disbursements of any Assistants retained or employed by the Petitioners which are related to the Petitioners' restructuring, at their standard rates and charges, including payment of the fees and disbursements of legal counsel retained by the Petitioners, whenever and wherever incurred, in respect of:

(i)     these proceedings or any other similar proceedings in other jurisdictions in which the Petitioners or any subsidiaries or affiliated companies of the Petitioners are domiciled;

(ii)    any litigation in which the Petitioners are named as a party or is otherwise involved, whether commenced before or after the Order Date; and

(iii)   any related corporate matters.

7.      Except as otherwise provided herein, the Petitioners shall be entitled to pay all expenses reasonably incurred by the Petitioners in carrying on the Business in the ordinary course following the Order Date, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a)      all expenses and capital expenditures reasonably incurred and which are necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors' and officers' insurance), maintenance and security services, provided that any capital expenditure exceeding $75,000 shall be approved by the Monitor;

(b)      all obligations incurred by the Petitioners after the Order Date, including without limitation, with respect to goods and services actually supplied to the Petitioners following the Order Date (including those under purchase orders outstanding at the Order Date but excluding any interest on the Petitioners' obligations incurred prior to the Order Date); and

(c)      fees and disbursements of the kind referred to in paragraph 6(b) which may be incurred after the Order Date.

8.      The Petitioners are authorized to remit, in accordance with legal requirements, or pay:

(a)      any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from Wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan, (iii) Quebec Pension Plan, and (iv) income taxes or any such claims which are to be paid pursuant to Section 6(3) of the CCAA;

(b)      all goods and services or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Petitioners in connection with the sale of goods and services by the Petitioners, but only where such Sales Taxes accrue or are collected after the Order Date, or where such Sales Taxes accrued or were

collected prior to the Order Date but not required to be remitted until on or after the Order Date; and

(c)     any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal property taxes, municipal business taxes or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors.

9.     Until such time as a real property lease is disclaimed in accordance with the CCAA, the Petitioners shall pay all amounts constituting rent or payable as rent under real property leases (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable as rent to the landlord under the lease) based on the terms of existing lease arrangements or as otherwise may be negotiated between the Petitioners and the landlord from time to time ("**Rent**"), for the period commencing from and including the Order Date, twice-monthly in equal payments on the first and fifteenth day of the month in advance (but not in arrears).   On the date of the first of such payments, any Rent relating to the period commencing from and including Order Date shall also be paid.

10.     Except as specifically permitted herein, the Petitioners are hereby directed, until further Order of this Court:

(a)     to make no payments of principal, interest thereon or otherwise on account of amounts owing by the Petitioners to any of their creditors as of the Order Date except as authorized by this Order;

(b)     to make no payments in respect of any financing leases which create security interests;

(c)     to grant no security interests, trust, mortgages, liens, charges or encumbrances upon or in respect of any of their Property, nor become a guarantor or surety, nor otherwise become liable in any manner with respect to any other person or entity except as authorized by this Order;

(d)     to not grant credit except in the ordinary course of the Business only to their customers for goods and services actually supplied to those customers, provided such customers agree that there is no right of set-off in respect of amounts owing for such goods and services against any debt owing by the Petitioners to such customers as of the Order Date; and

(e)     to not incur liabilities except in the ordinary course of Business.

11.     Notwithstanding paragraph 10, the Petitioners are permitted, with the consent of the Monitor, to make regular payments under all mortgages granted by the Petitioners due and after the Order date.

## RESTRUCTURING

12.     Subject to such requirements as are imposed by the CCAA and such covenants as may be contained in the Definitive Documents (as hereinafter defined), the Petitioners shall have the right to:

(a)     permanently or temporarily cease, downsize or shut down all or any part of their Business or operations and commence marketing efforts in respect of any of their redundant or non-material assets and to dispose of redundant or non-material assets not exceeding $10,000.00 in any one transaction or $100,000.00 in the aggregate. If the disposition of assets exceeds these quantums, the Petitioners shall seek the approval of the Monitor, and if the Monitor deems appropriate, the approval of the Court for such dispositions;

(b)     terminate the employment of such of their employees or temporarily lay off such of their employees as it deems appropriate; and

(c)     pursue all avenues of refinancing for their Business or Property, in whole or part;

all of the foregoing to permit the Petitioners to proceed with an orderly restructuring of the Business (the "**Restructuring**").

13.    The Petitioners shall provide each of the relevant landlords with notice of the Petitioners' intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal. The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes the Petitioners' entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors who claim a security interest in the fixtures, such landlord and the Petitioners, or by further Order of this Court upon application by the Petitioners, the landlord or the applicable secured creditors on at least two (2) clear days' notice to the other parties. If a Petitioner disclaims the lease governing such leased premises in accordance with Section 32 of the CCAA, it shall not be required to pay Rent under such lease pending resolution of any dispute concerning such fixtures (other than Rent payable for the notice period provided for in Section 32(5) of the CCAA), and the disclaimer of the lease shall be without prejudice to the Petitioners' claim to the fixtures in dispute.

14.    If a notice of disclaimer is delivered pursuant to Section 32 of the CCAA, then: (a) during the period prior to the effective time of the disclaimer, the landlord may show the affected leased premises to prospective tenants during normal business hours on giving the Petitioners and the Monitor 24 hours' prior written notice; and (b) at the effective time of the disclaimer, the landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims the landlord may have against the Petitioners, or any other rights the landlord might have, in respect of such lease or leased premises and the landlord shall be entitled to notify the Petitioners of the basis on which it is taking possession and gain possession of and re-lease such leased premises to any third party or parties on such terms as the landlord considers advisable, provided that nothing herein shall relieve the landlord of its obligation to mitigate any damages claimed in connection therewith.

15.    Pursuant to Section 7(3)(c) of the *Personal Information Protection and Electronics Documents Act*, S.C. 2000, c. 5 and Section 18(1)(o) of the *Personal Information Protection Act*, S.B.C. 2003, c. 63, and any regulations promulgated under authority of either Act, as applicable (the "**Relevant Enactment**"), the Petitioners, in the course of these proceedings, are permitted

to, and hereby shall, disclose personal information of identifiable individuals in their possession or control to stakeholders, their advisors, prospective investors, financiers, buyers or strategic partners (collectively, **"Third Parties"**), but only to the extent desirable or required to negotiate and complete the Restructuring or to prepare and implement the Plan or transactions for that purpose; provided that the Third Parties to whom such personal information is disclosed enter into confidentiality agreements with the Petitioners binding them in the same manner and to the same extent with respect to the collection, use and disclosure of that information as if they were an organization as defined under the Relevant Enactment, and limiting the use of such information to the extent desirable or required to negotiate or complete the Restructuring or to prepare and implement the Plan or transactions for that purpose, and attorning to the jurisdiction of this Court for the purposes of that agreement. Upon the completion of the use of personal information for the limited purposes set out herein, the Third Parties shall return the personal information to the Petitioners or destroy it. If the Third Parties acquire personal information as part of the Restructuring or the preparation and implementation of the Plan or transactions in furtherance thereof, such Third Parties may, subject to this paragraph and any Relevant Enactment, continue to use the personal information in a manner which is in all respects identical to the prior use thereof by the Petitioner.

## STAY OF PROCEEDINGS, RIGHTS AND REMEDIES

16.     Until and including September ___14___, 2020, or such later date as this Court may order (the **"Stay Period"**), no action, suit or proceeding in any court or tribunal (each, a **"Proceeding"**) against or in respect of the Petitioners, or the Monitor, or affecting the Business or the Property, shall be commenced or continued except with the written consent of the Petitioners and the Monitor or with leave of this Court, and any and all Proceedings currently under way against or in respect of the Petitioners or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

17.     During the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being **"Persons"** and each being a **"Person"**) against or in respect of the Petitioners or the Monitor, or

affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the Petitioners and the Monitor or leave of this Court.

18.    Nothing in this Order, including paragraphs 16 and 17, shall: (i) empower the Petitioners to carry on any business which the Petitioners are not lawfully entitled to carry on; (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA; (iii) prevent the filing of any registration to preserve or perfect a mortgage, charge or security interest (subject to the provisions of Section 39 of the CCAA relating to the priority of statutory Crown securities); or (iv) prevent the registration or filing of a lien or claim for lien or the commencement of a Proceeding to protect lien or other rights that might otherwise be barred or extinguished by the effluxion of time, provided that no further step shall be taken in respect of such lien, claim for lien or Proceeding except for service of the initiating documentation on the Petitioner.

## NO INTERFERENCE WITH RIGHTS

19.    During the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Petitioners, except with the written consent of the Petitioners and the Monitor or leave of this Court.

## CONTINUATION OF SERVICES

20.    During the Stay Period, all Persons having oral or written agreements with the Petitioners or mandates under an enactment for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation, services, utility or other services to the Business or the Petitioner, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with, or terminating the supply of such goods or services as may be required by the Petitioners, and that the Petitioners shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services

received after the Order Date are paid by the Petitioners in accordance with normal payment practices of the Petitioners or such other practices as may be agreed upon by the supplier or service provider and the Petitioners and the Monitor, or as may be ordered by this Court.

## NON-DEROGATION OF RIGHTS

21.    Notwithstanding any provision in this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided on or after the Order Date, nor shall any Person be under any obligation to advance or re-advance any monies or otherwise extend any credit to the Petitioners on or after the Order Date. Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

## PROCEEDINGS AGAINST DIRECTORS AND OFFICERS

22.    During the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against the directors or officers of the Petitioners with respect to any claim against the directors or officers that arose before the date hereof and that relates to any obligations of the Petitioners whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Petitioners, if one is filed, is sanctioned by this Court or is refused by the creditors of the Petitioners or this Court. Nothing in this Order, including in this paragraph, shall prevent the commencement of a Proceeding to preserve any claim against a director or officer of the Petitioners that might otherwise be barred or extinguished by the effluxion of time, provided that no further step shall be taken in respect of such Proceeding except for service of the initiating documentation on the applicable director or officer.

## DIRECTORS AND OFFICERS INDEMNIFICATION AND CHARGE

23.    The Petitioners shall indemnify its directors and officers against obligations and liabilities that they may incur as directors or officers of the Petitioners after the commencement of the

within proceedings, except to the extent that, with respect to any director or officer, the obligation or liability was incurred as a result of the director's or officer's gross negligence or wilful misconduct.

24. The directors and officers of the Petitioners shall be entitled to the benefit of and are hereby granted a charge (the **"Directors' Charge"**) on the Property, which charge shall not exceed an aggregate amount of $350,000, as security for the indemnity provided in paragraph 23 of this Order. The Directors' Charge shall have the priority set out in paragraphs 35 and 37 herein.

25. Notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Petitioners' directors and officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 23 of this Order.

**APPOINTMENT OF MONITOR**

26. EY is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the business and financial affairs of the Petitioners with the powers and obligations set out in the CCAA or set forth herein, and that the Petitioners and their shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Petitioners pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

27. The Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

    (a)    assist the Petitioners in sourcing debtor-in-possession financing, and advising the Petitioners in relation thereto;

(b)   monitor the Petitioners' receipts and disbursements;

(c)   report to this Court at such times and intervals as the Monitor may deem
      appropriate with respect to matters relating to the Property, the Business, and such
      other matters as may be relevant to the proceedings herein;

(d)   advise the Petitioners in their preparation of the Petitioners' cash flow statements;

(e)   advise the Petitioners in their development of the Plan and any amendments to the
      Plan;

(f)   assist the Petitioner, to the extent required by the Petitioner, with the holding and
      administering of creditors' or shareholders' meetings for voting on the Plan;

(g)   have full and complete access to the Property, including the premises, books,
      records, data, including data in electronic form, and other financial documents of
      the Petitioner, to the extent that is necessary to adequately assess the Petitioners'
      business and financial affairs or to perform its duties arising under this Order;

(h)   be at liberty to engage independent legal counsel or such other persons as the
      Monitor deems necessary or advisable respecting the exercise of its powers and
      performance of its obligations under this Order; and

(i)   perform such other duties as are required by this Order or by this Court from time
      to time.

28.   The Monitor shall not take possession of the Property and shall take no part whatsoever
in the management or supervision of the management of the Business and shall not, by fulfilling
its obligations hereunder, or by inadvertence in relation to the due exercise of powers or
performance of duties under this Order, be deemed to have taken or maintained possession or
control of the Business or Property, or any part thereof, and nothing in this Order shall be

construed as resulting in the Monitor being an employer or a successor employer, within the meaning of any statute, regulation or rule of law or equity, for any purpose whatsoever.

29.     Nothing herein contained shall require or allow the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, **"Possession"**) of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act*, the *Fisheries Act*, the British Columbia *Environmental Management Act*, the British Columbia *Fish Protection Act* and regulations thereunder (the **"Environmental Legislation"**), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation.  For greater certainty, the Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

30.     The Monitor shall provide any creditor of the Petitioners with information provided by the Petitioners in response to reasonable requests for information made in writing by such creditor addressed to the Monitor.  The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph.  In the case of information that the Monitor has been advised by the Petitioners are confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Petitioners may agree.

31.     In addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the rights and protections afforded the Monitor by the CCAA or any applicable legislation.

**ADMINISTRATION CHARGE**

32.     The Monitor, counsel to the Monitor, if any, and counsel to the Petitioners shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, by the Petitioners as part of the cost of these proceedings.  The Petitioners are hereby authorized and directed to pay the accounts of the Monitor, counsel to the Monitor and counsel to the Petitioners on a periodic basis and, in addition, the Petitioners are hereby authorized to pay to the Monitor, counsel to the Monitor, and counsel to the Petitioners, retainers in the amounts of $50,000 each to be held by them as security for payment of their respective fees and disbursements outstanding from time to time.

33.     The Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the British Columbia Supreme Court who may determine the manner in which such accounts are to be passed, including by hearing the matter on a summary basis or referring the matter to a Registrar of this Court.

34.     The Monitor, counsel to the Monitor, if any, and counsel to the Petitioners shall be entitled to the benefit of and are hereby granted a charge (the "**Administration Charge**") on the Property, which charge shall not exceed an aggregate amount of $500,000, as security for their respective fees and disbursements incurred at the standard rates and charges of the Monitor and such counsel, both before and after the making of this Order which are related to the Petitioners' restructuring.  The Administration Charge shall have the priority set out in paragraphs 35 and 37 hereof.

**VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER**

35.     The priorities of the Administration Charge and the Directors' Charge, as among them, shall be as follows:

First – Administration Charge (to the maximum amount of $500,000);

Second – Directors' Charge (to the maximum amount of $350,000).

Any security documentation evidencing, or the filing, registration or perfection of, the Administration Charge and the Directors' Charge (collectively, the **"Charges"**) shall not be required, and that the Charges shall be effective as against the Property and shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered or perfected subsequent to the Charges coming into existence, notwithstanding any failure to file, register or perfect any such Charges.

36.     Each of the Charges shall constitute a mortgage, security interest, assignment by way of security and charge on the Property and such Charges shall rank in priority to all other security interests, trusts, liens, mortgages, charges and encumbrances and claims of secured creditors, statutory or otherwise (collectively, **"Encumbrances"**), in favour of any Person, save and except those claims contemplated by section 11.8(8) of the CCAA.

37.     Except as otherwise expressly provided herein, or as may be approved by this Court, the Petitioners shall not grant or suffer to exist any Encumbrances over any Property that rank in priority to, or *pari passu* with the Charges, unless the Petitioners obtains the prior written consent of the Monitor and the beneficiaries of the Administration Charge and the Director's Charge.

38.     The Administration Charge and the Director's Charge shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the **"Chargees"**) shall not otherwise be limited or impaired in any way by (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) issued pursuant to the BIA, or any bankruptcy order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, mortgage, security agreement, debenture, sublease, offer to lease or other agreement (collectively, an **"Agreement"**) which binds the Petitioners; and notwithstanding any provision to the contrary in any Agreement:

(a)   the creation of the Charges shall not create or be deemed to constitute a breach by the Petitioners of any Agreement to which it is a party;

(b)   none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the creation of the Charges; and

(c)   the payments made by the Petitioners pursuant to this Order and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

39.   THIS COURT ORDERS that any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Petitioners' interest in such real property leases.

**SERVICE AND NOTICE**

40.   The Monitor shall (i) without delay, publish in the *Globe and Mail* a notice containing the information prescribed under the CCAA, (ii) within five days after Order Date, (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, in the prescribed manner, a notice to every known creditor who has a claim against the Petitioners of more than $1000, and (C) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder.

41.   The Petitioners and the Monitor are at liberty to serve this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or electronic transmission to the Petitioners' creditors or other interested parties at their respective addresses as last shown on the records of the Petitioners and that any such service or notice by courier, personal delivery or electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

42.   Any Person that wishes to be served with any application and other materials in these proceedings must deliver to the Monitor by way of ordinary mail, courier, personal delivery or electronic transmission a request to be added to a service list (the "**Service List**") to be maintained by the Monitor. The Monitor shall post and maintain an up to date form of the Service List on its website at: www.ey.com/ca/urthecast.

43.   Any party to these proceedings may serve any court materials in these proceedings by emailing a PDF or other electronic copy of such materials to counsels' email addresses as recorded on the Service List from time to time, and the Monitor shall post a copy of all prescribed materials on its website at: www.ey.com/ca/urthecast.

44.   Notwithstanding paragraphs 47 and 48 of this Order, service of the Petition, the Notice of Hearing of Petition, any affidavits filed in support of the Petition and this Order shall be made on the Federal and British Columbia Crowns in accordance with the *Crown Liability and Proceedings Act*, R.S.C. 1985, c. C-50, and regulations thereto, in respect of the Federal Crown, and the *Crown Proceeding Act*, R.S.B.C. 1996, c. 89, in respect of the British Columbia Crown.

**GENERAL**

45.   The Petitioners or the Monitor may from time to time apply to this Court for directions in the discharge of its powers and duties hereunder.

46.   Nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Petitioners, the Business or the Property.

47.   THIS COURT REQUESTS the aid and recognition of other Canadian and foreign Courts, tribunal, regulatory or administrative bodies, including any Court or administrative tribunal of any federal or State Court or administrative body in the United States of America, to act in aid of and to be complementary to this Court in carrying out the terms of this Order where required.   All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Petitioners and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order,

to grant representative status to the Monitor in any foreign proceeding, or to assist the Petitioners and the Monitor and their respective agents in carrying out the terms of this Order.

48.     Each of the Petitioners and the Monitor shall be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order and the Monitor is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada, including acting as a foreign representative of the Petitioners to apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the *United States Bankruptcy Code*, 11 U.S.C. §§ 101-1330, as amended.

49.     The Petitioners may (subject to the provisions of the CCAA and the BIA) at any time file a voluntary assignment in bankruptcy or a proposal pursuant to the commercial reorganization provisions of the BIA if and when the Petitioners determines that such a filing is appropriate.

50.     The Petitioners are hereby at liberty to apply for such further interim or interlocutory relief as it deems advisable within the time limited for Persons to file and serve Responses to the Petition.

51.     Leave is hereby granted to hear any application in these proceedings on two (2) clear days' notice after delivery to all parties on the Service List of such Notice of Application and all affidavits in support, subject to the Court in its discretion further abridging or extending the time for service.

52.     Any interested party (including the Petitioners and the Monitor) may apply to this Court to vary or amend this Order on not less than seven (7) days' notice to all parties on the Service List and to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

53.     Endorsement of this Order by counsel appearing on this application other than counsel for the Petitioners is hereby dispensed with.

54.     This Order and all of its provisions are effective as of 12:01 a.m. local Vancouver time on
the Order Date.

THE FOLLOWING PARTIES APPROVE THE FORM OF THIS ORDER AND CONSENT
TO EACH OF THE ORDERS, IF ANY, THAT ARE INDICATED ABOVE AS BEING BY
CONSENT:

_____
Signature of Alexandra Andrisoi
☐ Party   ☑ Lawyer for the Petitioners

BY THE COURT

_____
REGISTRAR

Certified a true copy according to
the records of the Supreme Court
at Vancouver, B.C.
DATED: SEP 2 9 2020

Authorized Signing Officer
DRINA READ



**Schedule "A"**
**List of Petitioners**

1. 1185781 B.C. Ltd.

2. Deimos Imaging S.L.U.

3. DOT Imaging S.L.U.

4. Geosys Australia PTY

5. Geosys do Brasil Sistemas de Informacao Agricolas Ltda.

6. Geosys Europe Sarl

7. Geosys Holding, ULC (was Geosys Technology Holding LLC)

8. Geosys-Int'l, Inc.

9. Geosys S.A.S.

10. UrtheCast Holdings (Malta) Limited

11. UrtheCast Imaging S.L.U.

12. UrtheCast Investments (Malta) Limited

13. UrtheDaily Corp.

Schedule "B"

<u>List of Counsel</u>

| Name of Counsel | Party Represented |
|---|---|
| Colin Brousson | Proposed Monitor. |
| | |
| | |
| | |
| | |

**EXHIBIT B**

SUPREME COURT
OF BRITISH COLUMBIA
VANCOUVER REGISTRY

SEP 2 3 2020

ENTERED

SUPREME COURT
OF BRITISH COLUMBIA

**SEAL**

VANCOUVER
REGISTRY

No. S-208894
Vancouver Registry

## IN THE SUPREME COURT OF BRITISH COLUMBIA

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

– AND –

IN THE MATTER OF A PLAN OF COMPROMISE AND ARRANGEMENT OF
URTHECAST CORP., URTHECAST INTERNATIONAL CORP., URTHECAST USA INC.,
1185729 B.C. LTD. AND THOSE OTHER PETITIONERS SET OUT ON THE ATTACHED
SCHEDULE "A"

## ORDER MADE AFTER APPLICATION
### (Revised Amended and Restated Initial Order)

| | | |
|---|---|---|
| BEFORE THE HONOURABLE | ) | |
| MADAM JUSTICE SHARMA | ) | September 23, 2020 |
| | ) | |

THE APPLICATION of the Petitioners coming on for hearing by telephone at Vancouver, British Columbia, on the 23rd day of September, 2020; AND ON HEARING David E. Gruber, counsel for the Petitioners and those other counsel listed on **Schedule "B"** hereto; AND UPON READING the material filed, including the Affidavits of Sai Chu filed in these proceedings and the Second Report of Ernst & Young, Inc. ("**EY**") in its capacity as Monitor; AND pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985 c. C-36 as amended (the "**CCAA**"), the British Columbia Supreme Court Civil Rules and the inherent jurisdiction of this Honourable Court; and further to the Initial Order pronounced by this Court on the 4th day of September, 2020 (the "**Order Date**");

2

THIS COURT ORDERS AND DECLARES THAT:

1.     This Revised Amended and Restated Initial Order amends and restates the Order (the
**"Amended and Restated Initial Order"**) of this Court made in these proceedings on September
14, 2020.

**SERVICE**

2.     The time for service of the Notice of Application dated September 22, 2020 herein be and
is hereby abridged such that the Notice of Application is properly returnable today and service
thereof on any interested party is hereby dispensed with.

**JURISDICTION**

3.     The Petitioners are companies to which the CCAA applies.  For greater certainty, the
companies set out in Schedule "A" to this Order shall enjoy the benefits of the protections
provided herein, and shall be subject to the same restrictions hereunder.

**PLAN OF ARRANGEMENT**

4.     Subject to the Hale Commitment Letter (as defined below), the Petitioners shall have the
authority to file and may, subject to further order of this Court, file with this Court a plan of
compromise or arrangement (hereinafter referred to as the **"Plan"**).

**POSSESSION OF PROPERTY AND OPERATIONS**

5.     Subject to the Hale Commitment Letter, this Order and any further Order of this Court,
the Petitioners shall remain in possession and control of their current and future assets,
undertakings and properties of every nature and kind whatsoever, and wherever situate including
all proceeds thereof (the **"Property"**), and continue to carry on their business (the **"Business"**) in
the ordinary course and in a manner consistent with the preservation of the Business and the
Property.  The Petitioners shall be authorized and empowered to continue to retain and employ

the employees, consultants, agents, experts, accountants, counsel and such other persons (collectively, **"Assistants"**) currently retained or employed by them, with liberty to retain such further Assistants as they deems reasonably necessary or desirable in the ordinary course of business or for carrying out the terms of this Order.

6.     THIS COURT ORDERS that the Petitioners shall be entitled to continue to utilize the cash management system currently in place as described in the Affidavit of Sai Chu sworn September 3, 2020 or replace it with another substantially similar cash management system (the **"Cash Management System"**) and that any present or future bank providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the Petitioners of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined) other than the Petitioners, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management System, an unaffected creditor under the Plan with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System.

7.     Subject to the Hale Commitment Letter, the Petitioners shall be entitled, but not required, to pay the following expenses which may have been incurred prior to the Order Date:

(a)     all outstanding wages, salaries, employee and pension benefits (including long and short term disability payments), vacation pay and expenses (but excluding severance pay) payable before or after the Order Date, in each case incurred in the ordinary course of business and consistent with the relevant compensation policies and arrangements existing at the time incurred (collectively **"Wages"**); and

(b)     the fees and disbursements of any Assistants retained or employed by the Petitioners which are related to the Petitioners' restructuring, at their standard

4

rates and charges, including payment of the fees and disbursements of legal counsel retained by the Petitioners, whenever and wherever incurred, in respect of:

(i)   these proceedings or any other similar proceedings in other jurisdictions in which the Petitioners or any subsidiaries or affiliated companies of the Petitioners are domiciled;

(ii)   any litigation in which the Petitioners are named as a party or is otherwise involved, whether commenced before or after the Order Date; and

(iii)   any related corporate matters.

8.   Except as otherwise provided herein and subject to the Hale Commitment Letter, the Petitioners shall be entitled to pay all expenses reasonably incurred by the Petitioners in carrying on the Business in the ordinary course following the Order Date. and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a)   all expenses and capital expenditures reasonably incurred and which are necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors' and officers' insurance), maintenance and security services, provided that any capital expenditure exceeding $75,000 shall be approved by the Monitor;

(b)   all obligations incurred by the Petitioners after the Order Date, including without limitation, with respect to goods and services actually supplied to the Petitioners following the Order Date (including those under purchase orders outstanding at the Order Date but excluding any interest on the Petitioners' obligations incurred prior to the Order Date); and

(c)   fees and disbursements of the kind referred to in paragraph 7(b) which may be incurred after the Order Date.

9.   The Petitioners are authorized to remit, in accordance with legal requirements, or pay:

WSLEGAL\074202\00042\25631515v4

5

(a)  any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from Wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan, (iii) Quebec Pension Plan, and (iv) income taxes or any such claims which are to be paid pursuant to Section 6(3) of the CCAA;

(b)  all goods and services or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Petitioners in connection with the sale of goods and services by the Petitioners, but only where such Sales Taxes accrue or are collected after the Order Date, or where such Sales Taxes accrued or were collected prior to the Order Date but not required to be remitted until on or after the Order Date; and

(c)  any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal property taxes, municipal business taxes or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors.

10.  Until such time as a real property lease is disclaimed in accordance with the CCAA, the Petitioners shall pay all amounts constituting rent or payable as rent under real property leases (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable as rent to the landlord under the lease) based on the terms of existing lease arrangements or as otherwise may be negotiated between the Petitioners and the landlord from time to time ("**Rent**"), for the period commencing from and including the Order Date, twice-monthly in equal payments on the first and fifteenth day of the month in advance (but not in arrears).  On the date of the first of such payments, any Rent relating to the period commencing from and including Order Date shall also be paid.

11.  Except as specifically permitted herein and subject to the Hale Commitment Letter, the Petitioners are hereby directed, until further Order of this Court:

WSLEGAL\074202\00042\25631515v4

6

(a)  to make no payments of principal, interest thereon or otherwise on account of amounts owing by the Petitioners to any of their creditors as of the Order Date except as authorized by this Order;

(b)  to make no payments in respect of any financing leases which create security interests;

(c)  to grant no security interests, trust, mortgages, liens, charges or encumbrances upon or in respect of any of their Property, nor become a guarantor or surety, nor otherwise become liable in any manner with respect to any other person or entity except as authorized by this Order;

(d)  to not grant credit except in the ordinary course of the Business only to their customers for goods and services actually supplied to those customers, provided such customers agree that there is no right of set-off in respect of amounts owing for such goods and services against any debt owing by the Petitioners to such customers as of the Order Date; and

(e)  to not incur liabilities except in the ordinary course of Business.

12.  Notwithstanding paragraph 11, the Petitioners are permitted, with the consent of the Monitor and the Hale Interim Lender (as defined below), to make regular payments under all mortgages granted by the Petitioners due and after the Order date.

**RESTRUCTURING**

13.  Subject to such requirements as are imposed by the CCAA and such covenants as may be contained in the Definitive Documents and Hale Definitive Documents (as hereinafter defined), the Petitioners shall have the right to:

(a)  permanently or temporarily cease, downsize or shut down all or any part of their Business or operations and commence marketing efforts in respect of any of their redundant or non-material assets and to dispose of redundant or non-material assets not exceeding $10,000.00 in any one transaction or $100,000.00 in the aggregate. If

the disposition of assets exceeds these quantums, the Petitioners shall seek the approval of the Monitor, and if the Monitor deems appropriate, the approval of the Court for such dispositions;

(b)   terminate the employment of such of their employees or temporarily lay off such of their employees as it deems appropriate; and

(c)   pursue all avenues of refinancing for their Business or Property, in whole or part;

all of the foregoing to permit the Petitioners to proceed with an orderly restructuring of the Business (the "**Restructuring**").

14.   The Petitioners shall provide each of the relevant landlords with notice of the Petitioners' intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal. The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes the Petitioners' entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors who claim a security interest in the fixtures, such landlord and the Petitioners, or by further Order of this Court upon application by the Petitioners, the landlord or the applicable secured creditors on at least two (2) clear days' notice to the other parties. If a Petitioner disclaims the lease governing such leased premises in accordance with Section 32 of the CCAA, it shall not be required to pay Rent under such lease pending resolution of any dispute concerning such fixtures (other than Rent payable for the notice period provided for in Section 32(5) of the CCAA), and the disclaimer of the lease shall be without prejudice to the Petitioners' claim to the fixtures in dispute.

15.   If a notice of disclaimer is delivered pursuant to Section 32 of the CCAA, then: (a) during the period prior to the effective time of the disclaimer, the landlord may show the affected leased premises to prospective tenants during normal business hours on giving the Petitioners and the Monitor 24 hours' prior written notice; and (b) at the effective time of the disclaimer, the landlord shall be entitled to take possession of any such leased premises without waiver of or

8

prejudice to any claims the landlord may have against the Petitioners, or any other rights the landlord might have, in respect of such lease or leased premises and the landlord shall be entitled to notify the Petitioners of the basis on which it is taking possession and gain possession of and re-lease such leased premises to any third party or parties on such terms as the landlord considers advisable, provided that nothing herein shall relieve the landlord of its obligation to mitigate any damages claimed in connection therewith.

16.     Pursuant to Section 7(3)(c) of the *Personal Information Protection and Electronics Documents Act*, S.C. 2000, c. 5 and Section 18(1)(o) of the *Personal Information Protection Act*, S.B.C. 2003, c. 63, and any regulations promulgated under authority of either Act, as applicable (the "**Relevant Enactment**"), the Petitioners, in the course of these proceedings, are permitted to, and hereby shall, disclose personal information of identifiable individuals in their possession or control to stakeholders, their advisors, prospective investors, financiers, buyers or strategic partners (collectively, "**Third Parties**"), but only to the extent desirable or required to negotiate and complete the Restructuring or to prepare and implement the Plan or transactions for that purpose; provided that the Third Parties to whom such personal information is disclosed enter into confidentiality agreements with the Petitioners binding them in the same manner and to the same extent with respect to the collection, use and disclosure of that information as if they were an organization as defined under the Relevant Enactment, and limiting the use of such information to the extent desirable or required to negotiate or complete the Restructuring or to prepare and implement the Plan or transactions for that purpose, and attorning to the jurisdiction of this Court for the purposes of that agreement.  Upon the completion of the use of personal information for the limited purposes set out herein, the Third Parties shall return the personal information to the Petitioners or destroy it.  If the Third Parties acquire personal information as part of the Restructuring or the preparation and implementation of the Plan or transactions in furtherance thereof, such Third Parties may, subject to this paragraph and any Relevant Enactment, continue to use the personal information in a manner which is in all respects identical to the prior use thereof by the Petitioner.

## STAY OF PROCEEDINGS, RIGHTS AND REMEDIES

17.    Until and including October 2, 2020, or such later date as this Court may order (the "**Stay Period**"), no action, suit or proceeding in any court or tribunal (each, a "**Proceeding**") against or in respect of the Petitioners, or the Monitor, or affecting the Business or the Property, shall be commenced or continued except with the written consent of the Petitioners and the Monitor or with leave of this Court, and any and all Proceedings currently under way against or in respect of the Petitioners or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

18.    During the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of the Petitioners or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the Petitioners and the Monitor or leave of this Court.

19.    Nothing in this Order, including paragraphs 17 and 18, shall: (i) empower the Petitioners to carry on any business which the Petitioners are not lawfully entitled to carry on; (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA; (iii) prevent the filing of any registration to preserve or perfect a mortgage, charge or security interest (subject to the provisions of Section 39 of the CCAA relating to the priority of statutory Crown securities); or (iv) prevent the registration or filing of a lien or claim for lien or the commencement of a Proceeding to protect lien or other rights that might otherwise be barred or extinguished by the effluxion of time, provided that no further step shall be taken in respect of such lien, claim for lien or Proceeding except for service of the initiating documentation on the Petitioner.

## NO INTERFERENCE WITH RIGHTS

20.    During the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or

permit in favour of or held by the Petitioners, except with the written consent of the Petitioners and the Monitor or leave of this Court.

## CONTINUATION OF SERVICES

21.     During the Stay Period, all Persons having oral or written agreements with the Petitioners or mandates under an enactment for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation, services, utility or other services to the Business or the Petitioner, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with, or terminating the supply of such goods or services as may be required by the Petitioners, and that the Petitioners shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the Order Date are paid by the Petitioners in accordance with normal payment practices of the Petitioners or such other practices as may be agreed upon by the supplier or service provider and the Petitioners and the Monitor, or as may be ordered by this Court.

## NON-DEROGATION OF RIGHTS

22.     Notwithstanding any provision in this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided on or after the Order Date, nor shall any Person be under any obligation to advance or re-advance any monies or otherwise extend any credit to the Petitioners on or after the Order Date. Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

## PROCEEDINGS AGAINST DIRECTORS AND OFFICERS

23.     During the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against the directors or officers of the Petitioners with respect to any claim against the directors or officers that arose before the date hereof and

11

that relates to any obligations of the Petitioners whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Petitioners, if one is filed, is sanctioned by this Court or is refused by the creditors of the Petitioners or this Court. Nothing in this Order, including in this paragraph, shall prevent the commencement of a Proceeding to preserve any claim against a director or officer of the Petitioners that might otherwise be barred or extinguished by the effluxion of time, provided that no further step shall be taken in respect of such Proceeding except for service of the initiating documentation on the applicable director or officer.

## DIRECTORS AND OFFICERS INDEMNIFICATION AND CHARGE

24.     The Petitioners shall indemnify its directors and officers against obligations and liabilities that they may incur as directors or officers of the Petitioners after the commencement of the within proceedings, except to the extent that, with respect to any director or officer, the obligation or liability was incurred as a result of the director's or officer's gross negligence or wilful misconduct.

25.     The directors and officers of the Petitioners shall be entitled to the benefit of and are hereby granted a charge (the **"Directors' Charge"**) on the Property, which charge shall not exceed an aggregate amount of $350,000, as security for the indemnity provided in paragraph 24 of this Order.  The Directors' Charge shall have the priority set out in paragraphs 48 and 50 herein.

26.     Notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Petitioners' directors and officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 24 of this Order.

## APPOINTMENT OF MONITOR

27.     EY is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the business and financial affairs of the Petitioners with the powers and obligations set out in the CCAA or set forth herein, and that the Petitioners and their shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Petitioners pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

28.     The Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

(a)     assist the Petitioners in sourcing debtor-in-possession financing, and advising the Petitioners in relation thereto;

(b)     monitor the Petitioners' receipts and disbursements;

(c)     report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceedings herein;

(d)     advise the Petitioners in their preparation of the Petitioners' cash flow statements and reporting required by the Hale Interim Lender or Interim Lender, which information shall be reviewed with the Monitor and delivered to the applicable Hale Interim Lender or Interim Lender and their respective counsel in accordance with the Commitment Letter and Hale Commitment Letter;

(e)     assist the Petitioners, to the extent required by the Petitioners and the Interim Lender and Hale Interim Lender, in its dissemination to the Interim Lender and Hale Interim Lender and their respective counsel, financial information and

reporting as contemplated in the Commitment Letter and Hale Commitment Letter;

(f)     advise the Petitioners in their development of the Plan and any amendments to the Plan;

(g)     assist the Petitioner, to the extent required by the Petitioner, with the holding and administering of creditors' or shareholders' meetings for voting on the Plan;

(h)     have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the Petitioner, to the extent that is necessary to adequately assess the Petitioners' business and financial affairs or to perform its duties arising under this Order;

(i)     be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order;

(j)     hold funds in trust or in escrow, to the extent required, to facilitate settlements or other arrangements in connection with the Restructuring between the Applicants and any other Person;

(k)     implement a sales and investment solicitation process for the sale of the ISS Cameras (as defined in Affidavit #1 of Sai Chu, sworn September 3, 2020); and

(l)     perform such other duties or take any steps reasonably incidental to the exercise of any powers and obligations conferred upon the Monitor by this Order or any further order of the Court.

29.     The Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, or by inadvertence in relation to the due exercise of powers or

performance of duties under this Order, be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof, and nothing in this Order shall be construed as resulting in the Monitor being an employer or a successor employer, within the meaning of any statute, regulation or rule of law or equity, for any purpose whatsoever.

30.     Nothing herein contained shall require or allow the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, **"Possession"**) of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act*, the *Fisheries Act*, the British Columbia *Environmental Management Act*, the British Columbia *Fish Protection Act* and regulations thereunder (the **"Environmental Legislation"**), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation. For greater certainty, the Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

31.     The Monitor shall provide any creditor of the Petitioners with information provided by the Petitioners in response to reasonable requests for information made in writing by such creditor addressed to the Monitor. The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph. In the case of information that the Monitor has been advised by the Petitioners are confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Petitioners may agree.

32.     In addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross

negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the rights and protections afforded the Monitor by the CCAA or any applicable legislation.

## ADMINISTRATION CHARGE

33.   The Monitor, counsel to the Monitor, if any, and counsel to the Petitioners shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, by the Petitioners as part of the cost of these proceedings.  The Petitioners are hereby authorized and directed to pay the accounts of the Monitor, counsel to the Monitor and counsel to the Petitioners on a periodic basis and, in addition, the Petitioners are hereby authorized to pay to the Monitor, counsel to the Monitor, and counsel to the Petitioners, retainers in the amounts of $50,000 each to be held by them as security for payment of their respective fees and disbursements outstanding from time to time.

34.   The Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the British Columbia Supreme Court who may determine the manner in which such accounts are to be passed, including by hearing the matter on a summary basis or referring the matter to a Registrar of this Court.

35.   The Monitor, counsel to the Monitor, if any, and counsel to the Petitioners shall be entitled to the benefit of and are hereby granted a charge (the "**Administration Charge**") on the Property, which charge shall not exceed an aggregate amount of $500,000, as security for their respective fees and disbursements incurred at the standard rates and charges of the Monitor and such counsel, both before and after the making of this Order which are related to the Petitioners' restructuring.  The Administration Charge shall have the priority set out in paragraphs 48 and 50 hereof.

## INTERIM FINANCING

36.   The Petitioners are hereby authorized and empowered to obtain and borrow under a credit facility from 1262743 B.C. Ltd. (the "**Interim Lender**") in order to finance the continuation of

the Business and preservation of the Property, provided that borrowings under such credit facility shall not exceed USD $1,000,000.00 unless permitted by further Order of this Court.

37.     Such credit facility shall be on the terms and subject to the conditions set forth in a commitment letter between the Petitioners and the Interim Lender on terms to be approved by the Monitor (the "**Commitment Letter**").

38.     The Petitioners are hereby authorized and empowered to execute and deliver such credit agreements, mortgages, charges, hypothecs and security documents, guarantees and other definitive documents (collectively, the "**Definitive Documents**"), as are contemplated by the Commitment Letter or as may be reasonably required by the Interim Lender pursuant to the terms thereof, and the Petitioners are hereby authorized and directed to pay and perform all of its indebtedness, interest, fees, liabilities and obligations to the Interim Lender under and pursuant to the Commitment Letter and the Definitive Documents as and when the same become due and are to be performed, notwithstanding any other provision of this Order.

39.     The Interim Lender shall be entitled to the benefit of and is hereby granted a charge (the "**Interim Lender's Charge**") on the Property. The Interim Lender's Charge shall not secure an obligation that exists before this Order is made.  The Interim Lender's Charge shall have the priority set out in paragraphs 48 and 50 hereof.

40.     Notwithstanding any other provision of this Order:

    (a)     the Interim Lender may take such steps from time to time as it may deem necessary or appropriate to file, register, record or perfect the Interim Lender's Charge or any of the Definitive Documents;

    (b)     upon the occurrence of an event of default under any of the Definitive Documents or the Interim Lender's Charge, the Interim Lender, upon 7 days notice to the Petitioners and the Monitor, may exercise any and all of its rights and remedies against the Petitioners or the Property under or pursuant to the Commitment Letter, Definitive Documents and the Interim Lender's Charge, including without

limitation, to cease making advances to the Petitioners and set off and/or consolidate any amounts owing by the Interim Lender to the Petitioners against the obligations of the Petitioners to the Interim Lender under the Commitment Letter, the Definitive Documents or the Interim Lender's Charge, to make demand, accelerate payment and give other notices, or to apply to this Court for the appointment of a receiver, receiver and manager or interim receiver, or for a bankruptcy order against the Petitioners and for the appointment of a trustee in bankruptcy of the Petitioners; and

(c)     the foregoing rights and remedies of the Interim Lender shall be enforceable against any trustee in bankruptcy, interim receiver, receiver or receiver and manager of the Petitioner or the Property.

41.     The Interim Lender, in such capacity, shall be treated as unaffected in any plan of arrangement or compromise filed by the Petitioners under the CCAA, or any proposal filed by the Petitioners under the *Bankruptcy and Insolvency Act* of Canada (the "**BIA**"), with respect to any advances made under the Definitive Documents.

## SENIOR INTERIM FINANCING

42.     The Petitioners are hereby authorized and empowered to obtain and borrow under a credit facility (the "**Hale Facility**") from HCP-FVL, LLC, an affiliate of Hale Capital Partners L.P. (the "**Hale Interim Lender**"), in order to finance the continuation of the Business and preservation of the Property, provided that borrowings under such credit facility shall not exceed the principal amount of USD $5,000,000.00 unless permitted by further Order of this Court.

43.     The Hale Facility shall be on the terms and subject to the conditions set forth in a commitment letter between the Petitioners and the Hale Interim Lender on terms to be approved by the Monitor (the "**Hale Commitment Letter**").

44.     The Petitioners are hereby authorized and empowered to execute and deliver such credit agreements, mortgages, charges, hypothecs and security documents, guarantees and other definitive documents (collectively, the "**Hale Definitive Documents**"), as are contemplated by

the Hale Commitment Letter or as may be reasonably required by the Hale Interim Lender pursuant to the terms thereof, and the Petitioners are hereby authorized and directed to pay and perform all of its indebtedness, interest, fees, liabilities and obligations to the Hale Interim Lender under and pursuant to the Hale Commitment Letter and the Hale Definitive Documents as and when the same become due and are to be performed, notwithstanding any other provision of this Order.

45.    The Hale Interim Lender shall be entitled to the benefit of and is hereby granted a charge (the "**Hale Interim Lender's Charge**") on the Property. The Hale Interim Lender's Chargeshall not secure an obligation that exists before this Order is made.  The Hale Interim Lender's Chargeshall rank behind the Administration Charge and in priority to the Interim Lender's Charge with the priority set out in paragraphs 48 and 50 provided however that the Hale Interim Lender must either obtain the Interim Lender's consent or the Interim Lender must be paid any amounts owing pursuant to the Commitment Letter prior to any advance above USD $2,000,000 being secured by the Hale Interim Lender's Charge.

46.    Notwithstanding any other provision of this Order:

    (a)    the Hale Interim Lender may take such steps from time to time as it may deem necessary or appropriate to file, register, record or perfect the Hale Interim Lender's Chargeor any of the Hale Definitive Documents;

    (b)    upon the occurrence of an event of default under any of the Hale Definitive Documents or the Hale Interim Lender's Charge, the Hale Interim Lender, upon 7 days notice to the Petitioners and the Monitor, may exercise any and all of its rights and remedies against the Petitioners or the Property under or pursuant to the Hale Commitment Letter, Hale Definitive Documents and the Hale Interim Lender's Charge, including without limitation, to cease making advances to the Petitioners and set off and/or consolidate any amounts owing by the Hale Interim Lender to the Petitioners against the obligations of the Petitioners to the Hale Interim Lender under the  Hale Commitment Letter, the Hale Definitive Documents or the Hale Interim Lender's Charge, to make demand, accelerate

payment and give other notices, or to apply to this Court for the appointment of a receiver, receiver and manager or interim receiver, or for a bankruptcy order against the Petitioners and for the appointment of a trustee in bankruptcy of the Petitioners; and

(c)     the foregoing rights and remedies of the Hale Interim Lender shall be enforceable against any trustee in bankruptcy, interim receiver, receiver or receiver and manager of the Petitioner or the Property.

47.     The Hale Interim Lender, in such capacity, shall be treated as unaffected in any plan of arrangement or compromise filed by the Petitioners under the CCAA, or any proposal filed by the Petitioners under the *BIA*, with respect to any advances made under the Hale Commitment Letter or the Hale Definitive Documents.

## VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER

48.     The priorities of the Administration Charge, the Interim Lender's Charge, the Hale Interim Lender's Charge, the Directors' Charge, and the Intercompany Charge, as among them, shall be as follows:

First – Administration Charge (to the maximum amount of $500,000);

Second – Hale Interim Lender's Charge;

Third – Interim Lender's Charge;

Fourth – Directors' Charge (to the maximum amount of $350,000); and

Fifth – Intercompany Charge

Any security documentation evidencing, or the filing, registration or perfection of, the Administration Charge, the Hale Interim Lender's Charge, the Interim Lender's Charge, Directors' Charge, and the Intercompany Charge (collectively, the "**Charges**") shall not be required, and that the Charges shall be effective as against the Property and shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered or

perfected subsequent to the Charges coming into existence, notwithstanding any failure to file, register or perfect any such Charges.

49.     Each of the Charges shall constitute a mortgage, security interest, assignment by way of security and charge on the Property and such Charges shall rank in priority to all other security interests, trusts, liens, mortgages, charges and encumbrances and claims of secured creditors, statutory or otherwise (collectively, **"Encumbrances"**), in favour of any Person, save and except those claims contemplated by section 11.8(8) of the CCAA.

50.     Except as otherwise expressly provided herein, or as may be approved by this Court, the Petitioners shall not grant or suffer to exist any Encumbrances over any Property that rank in priority to, or *pari passu* with the Charges, unless the Petitioners obtains the prior written consent of the Monitor and the beneficiaries of the Administration Charge, Hale Interim Lender's Charge, Interim Lender's Charge, Intercompany Charge and the Director's Charge.

51.     The Administration Charge, the Director's Charge, the Interim Lender's Charge, the Hale Interim Lender's Charge, the Commitment Letter, the Hale Commitment Letter, the Definitive Documents, the Hale Definitive Documents, the Intercompany Charge and the Intercompany Advances Security Documents shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the **"Chargees"**) shall not otherwise be limited or impaired in any way by (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) issued pursuant to the BIA, or any bankruptcy order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, mortgage, security agreement, debenture, sublease, offer to lease or other agreement (collectively, an **"Agreement"**) which binds the Petitioners; and notwithstanding any provision to the contrary in any Agreement:

(a)     neither the creation of the Charges nor the execution, delivery, perfection, registration or performance of the Intercompany Advances, Security Documents,

WSLEGAL\074202\00042\25631515v4

the Commitment Letter, the Hale Commitment Letter, the Definitive Documents or Hale Definitive Documents shall create or be deemed to constitute a breach by the Petitioners of any Agreement to which it is a party;

(b)    none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the creation of the Charges or from the Intercompany Lender entering into the Intercompany Advances Security Documents and the Commitment Letter, the Hale Commitment Letter, or the execution, delivery or performance of the Definitive Documents, the Hale Definitive Documents and the Intercompany Advances Security Documents; and

(c)    the payments made by the Petitioners pursuant to this Order, the Intercompany Advances Security Documents, the Commitment Letter, the Hale Commitment Letter, the Definitive Documents, the Hale Definitive Documents and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

52.    THIS COURT ORDERS that any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Petitioners' interest in such real property leases.

**RELIEF FROM REPORTING OBLIGATIONS**

53.    THIS COURT ORDERS that the decision by the Petitioners to incur no further expenses in relation to any filings, disclosures, core or non-core documents, restatements, amendments to existing filings, press releases or any other actions (collectively, the **"Securities Filings"**) that may be required by any federal, provincial or other law respecting securities or capital markets in Canada or the United States, or by the rules and regulations of a stock exchange, including without limitation, the *Securities Act (British Columbia)* and comparable statutes enacted by other provinces of Canada, the *Securities Act of 1933* (United States) and the *Securities Exchange Act of 1934* (United States) and comparable statutes enacted by individual states of the

United States, the TSX Company Manual and other rules, regulations and policies of the Toronto Stock Exchange (collectively, the **"Securities Provisions"**), is hereby authorized, provided that nothing in this paragraph shall prohibit any securities regulator or stock exchange from taking any action or exercising any discretion that it may have of a nature described in section 11.1(2) of the CCAA as a consequence of the Petitioners failing to make any Securities Filings required by the Securities Provisions.

54.    THIS COURT ORDERS that none of the directors, officers, employees and other representatives of the Petitioners, the Monitor (and its directors, officers, employees and representatives, shall have any personal liability for any failure by the Petitioners to make any Securities Filings required by the Securities Provisions.

## INTERCOMPANY FINANCING

55.    THIS COURT ORDERS that subject to the Hale Commitment Letter, UrtheCast Corp. (the **"Intercompany Lender"**) is authorized to loan to each of Geosys Holdings, ULC, Geosys-Int'l, Inc, Geosys SAS, Geosys Australia PTY, Geosys do Brasil Sistemas de Informacao Agricolas Ltda. and Geosys Europe SARL (collectively, the **"Geosys Petitioners"**), and each of the Geosys Petitioners is authorized to borrow, repay and re-borrow, such amounts from time to time as the Geosys Petitioners, with the approval of the Monitor, considers necessary or desirable on a revolving basis to fund its ongoing expenditures and to pay such other amounts as are permitted by the terms of this Order (the **"Intercompany Advances"**), on terms consistent with existing arrangements or past practice or otherwise as approved by the Monitor, including as to the provision of any security to be provided by the Geosys Petitioners to the Intercompany Lender to secure the Intercompany Advances.

56.    Subject to the Hale Commitment Letter, each of the Geosys Petitioners is authorized and empowered to execute and deliver such credit agreements, mortgages, charges, hypothecs and security documents, guarantees and other definitive documents (collectively, the **"Intercompany Advances Security Documents"**) as may be reasonably necessary and as approved by the Monitor to perfect any security for the Intercompany Advances in any jurisdiction in which Property of the Geosys Petitioners may be located.

WSLEGAL\074202\00042\25631515v4

57.    THIS COURT ORDERS that the Intercompany Lender shall be entitled to the benefit and is hereby granted a charge (the "**Intercompany Charge**") on all of the Property of each of the Geosys Petitioners, as security for the Intercompany Advances made to such Geosys Petitioner, which Intercompany Charge shall not secure an obligation that exists before the Order Date. The Intercompany Charge shall have the priority set out in paragraphs 48 and 50 of this Order.

58.    THIS COURT ORDERS AND DECLARES that the Intercompany Lender shall be treated as unaffected and may not be compromised in any Plan or any proposal filed under the BIA in respect of the Petitioners, with respect to any Intercompany Advances made on or after the Order Date.

## SALES AND INVESTMENT SOLICITATION PROCESS ("SISP")

59.    THIS COURT ORDERS that the Petitioners, upon obtaining the prior consent of the Monitor, are hereby authorized to commence a SISP with respect to the sale of the ISS Cameras (as defined in Affidavit #1 of Sai Chu, sworn September 3, 2020), in a form approved by the Monitor, which SISP may include a "stalking-horse" bid (the "**Stalking Horse Bid**") by the Interim Lender for the purchase price of $10,000.00 per ISS Camera and other commercial terms as reasonable necessary to implement the Stalking Horse Bid and as approved by the Monitor.

60.    The Petitioners shall seek approval of the Court for a sale of all or any part of the Property following the conclusion of the SISP.

61.    The Petitioners and the Monitor are hereby authorized and directed to perform their respective obligations and to do all things reasonably necessary to perform their obligations under the SISP.

## SERVICE AND NOTICE

62.    The Monitor shall (i) without delay, publish in the *Globe and Mail* a notice containing the information prescribed under the CCAA, (ii) within five days after Order Date, (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, in the prescribed

24

manner, a notice to every known creditor who has a claim against the Petitioners of more than $1000, and (C) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder.

63.      The Petitioners and the Monitor are at liberty to serve this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or electronic transmission to the Petitioners' creditors or other interested parties at their respective addresses as last shown on the records of the Petitioners and that any such service or notice by courier, personal delivery or electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

64.      Any Person that wishes to be served with any application and other materials in these proceedings must deliver to the Monitor by way of ordinary mail, courier, personal delivery or electronic transmission a request to be added to a service list (the "**Service List**") to be maintained by the Monitor. The Monitor shall post and maintain an up to date form of the Service List on its website at: www.ey.com/ca/urthecast.

65.      Any party to these proceedings may serve any court materials in these proceedings by emailing a PDF or other electronic copy of such materials to counsels' email addresses as recorded on the Service List from time to time, and the Monitor shall post a copy of all prescribed materials on its website at: www.ey.com/ca/urthecast.

66.      Notwithstanding paragraphs 63 and 65 of this Order, service of the Petition, the Notice of Hearing of Petition, any affidavits filed in support of the Petition and this Order shall be made on the Federal and British Columbia Crowns in accordance with the *Crown Liability and Proceedings Act*, R.S.C. 1985, c. C-50, and regulations thereto, in respect of the Federal Crown, and the *Crown Proceeding Act*, R.S.B.C. 1996, c. 89, in respect of the British Columbia Crown.

**GENERAL**

67.     The Petitioners or the Monitor may from time to time apply to this Court for directions in the discharge of its powers and duties hereunder.

68.     Nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Petitioners, the Business or the Property.

69.     THIS COURT REQUESTS the aid and recognition of other Canadian and foreign Courts, tribunal, regulatory or administrative bodies, including any Court or administrative tribunal of any federal or State Court or administrative body in the United States of America, to act in aid of and to be complementary to this Court in carrying out the terms of this Order where required. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Petitioners and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Petitioners and the Monitor and their respective agents in carrying out the terms of this Order.

70.     Each of the Petitioners and the Monitor shall be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order and the Monitor is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada, including acting as a foreign representative of the Petitioners to apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the *United States Bankruptcy Code*, 11 U.S.C. §§ 101-1330, as amended.

71.     The Petitioners may (subject to the provisions of the CCAA and the BIA) at any time file a voluntary assignment in bankruptcy or a proposal pursuant to the commercial reorganization provisions of the BIA if and when the Petitioners determines that such a filing is appropriate.

72.    The Petitioners are hereby at liberty to apply for such further interim or interlocutory relief as it deems advisable within the time limited for Persons to file and serve Responses to the Petition.

73.    Leave is hereby granted to hear any application in these proceedings on two (2) clear days' notice after delivery to all parties on the Service List of such Notice of Application and all affidavits in support, subject to the Court in its discretion further abridging or extending the time for service.

74.    Any interested party (including the Petitioners and the Monitor) may apply to this Court to vary or amend this Order on not less than seven (7) days' notice to all parties on the Service List and to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

75.    Any secured creditor may give notice to the Petitioners, the Monitor and the Hale Interim Lender that it intends to apply to this Court to vary or amend the terms of this Order pertaining to the Hale Commitment Letter within 48 hours of electronic delivery of this Order, the Notice of Application and the materials filed in support.  If such notice is given and such application is brought, it shall proceed on a *de novo* basis.  If no such notice is given, the respective secured creditor will be deemed to have consented or taken no position on the granting of the provisions in this Order pertaining to the Hale Commitment Letter.

76.    Endorsement of this Order by counsel appearing on this application other than counsel for the Petitioners is hereby dispensed with.

77.    This Order and all of its provisions are effective as of 12:01 a.m. local Vancouver time on the Order Date.

THE FOLLOWING PARTIES APPROVE THE FORM OF THIS ORDER AND CONSENT TO EACH OF THE ORDERS, IF ANY, THAT ARE INDICATED ABOVE AS BEING BY CONSENT:

Signature of David Gruber,

_____
Lawyer for the Petitioners

BY THE COURT

_____
REGISTRAR

Certified a true copy according to
the records of the Supreme Court
at Vancouver, B.C.
DATED:     SEP 2 9 2020

Authorized Signing Officer

DRINA READ

28

**Schedule "A"**
**List of Petitioners**

1. 1185781 B.C. Ltd.

2. Deimos Imaging S.L.U.

3. DOT Imaging S.L.U.

4. Geosys Australia PTY

5. Geosys do Brasil Sistemas de Informacao Agricolas Ltda.

6. Geosys Europe Sarl

7. Geosys Holding, ULC (was Geosys Technology Holding LLC)

8. Geosys-Int'l, Inc.

9. Geosys S.A.S.

10. UrtheCast Holdings (Malta) Limited

11. UrtheCast Imaging S.L.U.

12. UrtheCast Investments (Malta) Limited

13. UrtheDaily Corp.

**Schedule "B"**

<u>List of Counsel</u>

| Name of Counsel | Party Represented |
|---|---|
| Colin Brousson | The Monitor |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**EXHIBIT C**

SUPREME COURT
OF BRITISH COLUMBIA
VANCOUVER REGISTRY

OCT 0 2 2020

ENTERED

SUPREME COURT
OF BRITISH COLUMBIA

SEAL

VANCOUVER
REGISTRY

No. S-208894
Vancouver Registry

## IN THE SUPREME COURT OF BRITISH COLUMBIA

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

– AND –

IN THE MATTER OF A PLAN OF COMPROMISE AND ARRANGEMENT OF
URTHECAST CORP., URTHECAST INTERNATIONAL CORP., URTHECAST USA INC.,
1185729 B.C. LTD. AND THOSE OTHER PETITIONERS SET OUT ON THE ATTACHED
SCHEDULE "A"

### ORDER MADE AFTER APPLICATION

#### (Stay Extension and Foreign Representative Order)

| BEFORE THE HONOURABLE | ) | |
|---|---|---|
| MADAM JUSTICE SHARMA | ) | October 2, 2020 |
| | ) | |

THE APPLICATION of the Petitioners coming on for hearing at Vancouver, British Columbia,
on the 2nd day of October, 2020, by telephone; AND ON HEARING David E. Gruber, counsel
for the Petitioners and those other counsel listed on **Schedule "B"** hereto; AND UPON
READING the material filed, including the Third Report of Ernst & Young, Inc. in its capacity
as Monitor (the "**Monitor**");  AND pursuant to the *Companies' Creditors Arrangement Act*,
R.S.C. 1985 c. C-36 as amended (the "**CCAA**"), the British Columbia Supreme Court Civil
Rules and the inherent jurisdiction of this Honourable Court; AND further to the Revised
Amended and Restated Initial Order pronounced by this Court on September 23, 2020 (the
"**Revised ARIO**");

THIS COURT ORDERS AND DECLARES THAT:

## SERVICE

1.      The time for service of the Notice of Application dated October 1, 2020 herein be and is
hereby abridged such that the Notice of Application is properly returnable today and service
thereof on any interested party is hereby dispensed with.

**EXTENSION OF STAY OF PROCEEDINGS**

2.      The stay of proceedings provided for in the Initial Order pronounced September 4, 2020, as thereafter amended and extended, be and is hereby extended to and including December 18, 2020.

**FOREIGN PROCEEDINGS**

3.      Notwithstanding paragraphs 69 and 70 of the Revised ARIO, the Petitioner UrtheCast Corp. is hereby authorized and empowered to act as the foreign representative in respect of the within proceedings for the purposes of having these proceedings recognized in a jurisdiction outside of Canada.

4.      Notwithstanding paragraphs 69 and 70 of the Revised ARIO, the Petitioner UrtheCast Corp. is hereby authorized, to act as the foreign representative of the Petitioners in these proceedings and of the within proceedings, to apply for foreign recognition of these proceedings, as necessary, in any jurisdiction outside of Canada, including but not limited to in the United States pursuant to Chapter 15 of the *United States Bankruptcy Code,* 11 U.S.C. §§ 101-1532, as amended, and to take such actions necessary or appropriate in furtherance of the recognition of these proceedings or the prosecution of any sale transaction in any such jurisdiction.

5.      THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, in the United States or in any other foreign jurisdiction, to give effect to this Order and to assist the Petitioners, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Petitioners and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to UrtheCast Corp. in any foreign proceeding, or to assist the Monitor and their respective agents in carrying out the terms of this Order.

6.      THIS COURT ORDERS that each of the Petitioners herein and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order and any other Order issued in these proceedings.

**GENERAL**

7.      Endorsement of this Order by counsel appearing on this application other than the counsel for the Petitioners is hereby dispensed with.

THE FOLLOWING PARTIES APPROVE THE FORM OF THIS ORDER AND CONSENT TO EACH OF THE ORDERS, IF ANY, THAT ARE INDICATED ABOVE AS BEING BY CONSENT:

Signature of David Gruber,
Lawyer for the Petitioners

Certified a true copy according to
the records of the Supreme Court
at Vancouver, B.C.
DATED:      OCT 0 5 2020

Authorized Signing Officer

**ARDELIS YEUNG**

BY THE COURT

REGISTRAR

4

## Schedule "A"

### List of Petitioners

1. 1185781 B.C. Ltd.

2. Deimos Imaging S.L.U.

3. DOT Imaging S.L.U.

4. Geosys Australia PTY

5. Geosys do Brasil Sistemas de Informacao Agricolas Ltda.

6. Geosys Europe Sarl

7. Geosys Holding, ULC (was Geosys Technology Holding LLC)

8. Geosys-Int'l, Inc.

9. Geosys S.A.S.

10. UrtheCast Holdings (Malta) Limited

11. UrtheCast Imaging S.L.U.

12. UrtheCast Investments (Malta) Limited

13. UrtheDaily Corp.

## Schedule "B"

### List of Counsel

| Name of Counsel | Party Represented |
| --- | --- |
| Colin Brousson | The Monitor |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**UrtheCast, Corp.**
**Chapter 15 Voluntary Petition Attachments**

**#8. Others entitled to notice.**  A list containing names and addresses of (i) all persons or bodies authorized to administer foreign proceedings of the debtor, (ii) all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and (iii) all entities against whom provisional relief is being sought under 11 U.S.C. § 1519.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

---

In re:

UrtheCast Corp., *et al.*,

Debtors in a Foreign Proceeding.[1]

Joint Administration Requested

Case No.: 20-_____

Chapter 15

---

## CONSOLIDATED VERIFIED LIST PURSUANT TO
## FED. R. BANKR. P. 1007(a)(4), 1008, AND 2002(q)

---

I, Sai Chu, hereby declare under penalty of perjury under the laws of the United States of America, pursuant to section 1746 of title 28 of the United States Code, as follows:

1.    I am the Chief Financial Officer of UrtheCast Corp., which is the duly appointed foreign representative of the above-captioned debtors (the "Debtors"), which are the subject of proceedings under the Companies' Creditors Arrangement Act before the Supreme Court of British Columbia, Canada (the "Canadian Court"), No. S-208894, Vancouver Registry (the "Canadian Proceeding").

2.    The attached list contains the names and addresses of the following:

    a.    All persons or bodies authorized to administer foreign proceedings of the Debtors;

    b.    All parties to litigation pending in the United States in which any Debtor is a party at the time of filing of the petition; and

---

[1]The Debtors and the last four digits of their U.S. EIN or other unique identifier are as follows: UrtheCast Corp. (#7087); Geosys-Int'l, Inc. (#8642); Geosys Australia PTY (#1624); Geosys Europe SARL (#4389); Geosys S.A.S. (#3790); Geosys do Brasil Sistemas de Informacao Agriocola Ltda (#01-34); and Deimos Imaging S.L.U. (#4529).  The Debtors' mailing address is 1055 Canada Place, Ste 33, Vancouver BC V6C0C3.

     c.     All entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

The attached list also contains the names and addresses of all known creditors and contract-counterparties of the Debtors in the United States.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct according to the best of my knowledge, information and belief.

Dated:  October 5, 2020

                                          _____
                                          Sai Chu

71100466 v1

## Schedule 1

**Litigation Parties**

**-NONE-**

## **Schedule 2**

### **Provisional Relief Parties**

**PROVISIONAL RELIEF PARTIES**

<u>**US TRUSTEE AND OTHER
GOVERNMENT AGENCY
NOTICE PARTIES**</u>

United States Trustee
U.S. Trustee's Office
1015 US Courthouse
300 South Fourth Street
Minneapolis, MN 55415
ustpregion12.mn.ecf@usdoj.gov

Internal Revenue Service
Wells Fargo Place
30 E 7th St
Mail Stop 5700
St. Paul, MN 55101

Internal Revenue Service
Centralized Insolvency
Operations Unit
PO Box 7346
Philadelphia, PA 19101

MN Department of Revenue
Collection Enforcement
551 Bankruptcy Section
600 North Robert Street
St Paul, MN 55101-2228

Office of the U.S. Attorney
600 US Courthouse
300 S Fourth St
Minneapolis, MN 55415

<u>**CANADIAN MONITOR**</u>

Ernst & Young
Attn:  Philippe Mendelson & Mike
Bell
Monitor of the Petitioners
Pacific Centre
700 West Georgia Street
Vancouver, BX V7Y

DLA Piper (Canada) LLP
Attn:  Colin Brousson & Jeffrey
Bradshaw
Suite 2800 Park Place
666 Burrard Street
Vancouver, BC V6C 2Z7

Counsel for the Monitor

<u>**POTENTIAL U.S. CREDITORS
AND NOTICE PARTIES**</u>

Adaptive Insights, Ltd.
Attn: Officer or Managing, General
or Appointed Agent
3350 W. Bayshore Road, Ste. 200
Palo Alto CA 94303

Amazon Web Services, Inc.
Attn: Officer or Managing, General
or Appointed Agent
P.O. Box 84023
Seattle WA 98124

Bitglass, Inc.
Attn:  Officer or Managing, General
or Appointed Agent
675 Campbell Technology Pkwy,
#225
Campbell, CA 95008

CIGNA Health & Life Insurance
Company
Attn:  Officer or Managing, General
or Appointed Agent
13680 Collections Center Drive
Chicago, IL 60693

Datasite LLC
Attn: Officer or Managing, General
or Appointed Agent
P.O. Box 74007252
Chicago, IL 60674

Digi-Key Corporation
Attn:  Officer or Managing, General
or Appointed Agent
Attn:  Accounts Receivable
P.O. Box 390
Thief River Falls, MN 56701

Dorsey & Whitney LLP
Attn:  Officer or Managing, General
or Appointed Agent
P.O. Box 1680
Minneapolis, MN 55480-1680

Grossman Tucker Perreault &
Pfleger, PLLC
Attn:  Officer or Managing, General
or Appointed Agent
55 South Commercial Street
Manchester, NH 03101

Harris Geospatial Solutions, Inc.
Attn:  Officer or Managing, General
or Appointed Agent
P.O. Box 419486
Boston, MA 02241-9486

KnowBe4
Attn:  Officer or Managing, General
or Appointed Agent
P.O. Box 392286
Pittsburgh, PA 15251-9286

Oracle America, Inc.
Bank of America Lockbox Services
Attn:  Officer or Managing, General
or Appointed Agent
15612 Collections Center Drive
Chicago, IL 60693

RingCentral, Inc.
Attn:  Officer or Managing, General
or Appointed Agent
Dept. CH 19585
Palatine, IL 60055-9585

Seed Intellectual Property Law
Group
Attn:  Officer or Managing, General
or Appointed Agent
701 Fifth Avenue, Ste. 5400
Seattle, WA 98104-7092

TestEquity LLC
Attn:  Officer or Managing, General
or Appointed Agent
P.O. Box 515047
Los Angeles, CA 90051-5047

The Context Network LLC
Attn:  Officer or Managing, General
or Appointed Agent
P.O. Box 310555
Des Moines, IA 50331-0555

Amazon Web Services, Inc.
Attn:  Officer or Managing, General
or Appointed Agent
410 Terry Avenue North
Seattle, WA 98109

Environmental Systems Research
Institute, Inc.
Attn:  Officer or Managing, General
or Appointed Agent
380 New York Street
Redlands, CA 92373

## PROVISIONAL RELIEF PARTIES

Tactical Cloud LLC
Attn: Officer or Managing, General or Appointed Agent
3151 Airway Avenue
Ste. E-2
Costa Mesa, CA 92626

Zoom Video Communications Inc.
Attn: Officer or Managing, General or Appointed Agent
55 Almaden Blvd.
6th Floor
San Jose, CA 95113

Netwrix
Netwrix Accounts Receivable
Attn: Officer or Managing, General or Appointed Agent
P.O. Box 2081
Dublin, OH 43017

KDV – Payroll Processing
Attn: Officer or Managing, General or Appointed Agent
3800 American Blvd W
Ste. 1000
Minneapolis, MN 55431

Microsoft Corporation
Attn: Officer or Managing, General or Appointed Agent
One Microsoft Way
Redmond, WA 98052

Sendgrid
Attn: Officer or Managing, General or Appointed Agent
375 Beale Street
3rd Floor
San Francisco, CA 94105

MediaLink LLC
Attn: Officer or Managing, General or Appointed Agent
26 O'Farrell Street
San Francisco, CA 94108

Principal Life Insurance Company-SBD Grand Island
Attn: Officer or Managing, General or Appointed Agent
P.O. Box 10372
Des Moines, IA 50306-0372

Benefits Solutions
Attn: Officer or Managing, General or Appointed Agent
P.O. Bo 45329
Sa Francisco, CA 94145-0329

Brandywine 2201 Co-Way II
Attn: Officer or Managing, General or Appointed Agent
P.O. Box 826733
Philadelphia, PA 19182-6733

Baker & McKenzie LLP
Attn: Michael Nowina
Brookfield Place, Suite 2100
181 Bay Street
P.O. Box 874
Toronto, Ontario, M5J 2T3

Counsel for Winfield Solutions, LLC

Winfield Solutions, LLC
Attn: Teddy Bekele and Officer or Managing, General or Appointed Agent
4001 Lexington Avenue North
Ardent Hills, MN 55126

Dorsey & Whitney LLP
Attn: Robert Rosenbaum and Officer or Managing, General or Appointed Agent
50 South Sixth Street, Ste. 1500
Minneapolis, MN 55402-1498

Counsel for Winfield Solutions, LLC

Land O Lakes
Attn: Officer or Managing, General or Appointed Agent
4001 Lexington Avenue North
Arden Hills, MN 55126

## SECURED CREDITORS

SMF Investments Limited
Attn: Officer or Managing, General or Appointed Agent
4th Floor
Queen Victoria House
41-43 Victoria Street
Douglas, Isle of Man lM1 2LF

Export Development Canada
Attn: Officer or Managing, General or Appointed Agent
Industrial Technologies Office
235 Queen Street, 8th Floor
Ottawa ON K1A 0H5

Bolzano Investments Limited
Attn: Officer or Managing, General or Appointed Agent
Queen Victoria House
41-43 Victoria St.
Douglas, Isle of Man lM1 2LF

Lunar Ventures Inc.
Attn: Officer or Managing, General or Appointed Agent
3076 Sir Francis Drake's HWY
Road Town
Tortola, British Virgin Island

McMillan LLP
Attn: Vicki Tickle
Royal Centre
1005 West Georgia Street, Ste. 1500
P.O. Box 11117
Vancouver, BC V6E 4N7

Counsel to the Bolzano Investments Limited, Lunar Ventures Inc., Vine Rose Limited SMF Investments Limited

1249836 BC
Attn: Officer or Managing, General or Appointed Agent
1200 Lougheed Highway
Coquitlam BC V3K 6S4
Canada

1262743 B.C. LTD
c/oDraganfly Inc.
Attn: Scott Larson
2108 St. George Avenue
Saskatoon, SK S7MOK7 Canada

First Corporate Solutions
914 S Street
Sacramento, CA 95811

CT Corporation System
Attn: SPRS
330 N Brand Blvd., Ste. 700
Glendale, CA 91203

Banco Sadabell, SA
Ronda de Poniente 19
Portal 1
2 planta 28760
Tres Cantos (Madrid), Spain

71122142.1

**UrtheCast, Corp.**
**Chapter 15 Voluntary Petition Attachments**

**11.  Type of Debtor.**  A corporate ownership statement containing the information described in Rule 7007.1 of the Federal Rules of Bankruptcy Procedure.

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

In re:

UrtheCast Corp., *et al.*,

      Debtors in a Foreign Proceeding.[1]

Joint Administration Requested

Case No.: 20-_____

Chapter 15

## CORPORATE OWNERSHIP STATEMENT

The following corporate ownership statement is made pursuant to Rules 1007(a)(4) and 7007.1 of the Federal Rules of Bankruptcy Procedure:

- All Debtors are wholly owned by UrtheCast Corp.

- No corporate entities own 10% or more of a class of UrtheCast Corp.'s equity interests.

I declare under penalty of perjury under the laws of the United States of America that the information in the attached list is true and correct.

UrtheCast Corp., as Foreign Representative

_____

By: Sai Chu
Its: Chief Financial Officer

71077437 v1

---

[1]The Debtors and the last four digits of their U.S. EIN or other unique identifier are as follows: UrtheCast Corp. (#7087); Geosys-Int'l, Inc. (#8642); Geosys Australia PTY (#1624); Geosys Europe SARL (#4389); Geosys S.A.S. (#3790); Geosys do Brasil Sistemas de Informacao Agriocola Ltda (#01-34); and Deimos Imaging S.L.U. (#4529). The Debtors' mailing address is 1055 Canada Place, Ste 33, Vancouver BC V6C0C3.